### In the Matter of Norma Ann DOWELL, Debtor.

### UNITED STATES of America, Plaintiff,

v.

### Norma Ann DOWELL, Defendant.

Bankruptcy No. 85–00285–3.
Adv. A. No. 85–0638–3.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Dec. 16, 1987.
Reconsideration of Final Judgment
Jan. 7, 1988.

---

* The clerk of this court shall effect service hereof by mail on all parties according to the mailing matrix.

David DeTar Newbert, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Maurice B. Soltz, Soltz & Shankland, P.C., Kansas City, Mo., for defendant.

ORDER RECONSIDERING FORMER JUDGMENT DENYING DISCHARGE, ON INSTRUCTIONS FROM THE DISTRICT COURT, AND, ON RECONSIDERATION, DENYING COMPLAINT OF PLAINTIFF OBJECTING TO DISCHARGE AND ACCORDINGLY GRANTING DEFENDANT HER DISCHARGE IN BANKRUPTCY

DENNIS J. STEWART, Chief Judge.

On April 15, 1986, after full trial of the issues which had been joined on the plaintiff's objection to the defendant's discharge in bankruptcy on the grounds that she had willfully disobeyed an order of the bankruptcy court within the meaning of section 727(a)(6)(A) of the Bankruptcy Code, this court issued its final judgment denying the defendant's discharge in bankruptcy. In issuing that judgment, this court made the following material findings of fact and conclusions of law:

"(W)ith respect to (four separate orders directing the debtor to file schedules and statements of affairs) the plaintiff established that timely notice of each of the hearings and each of the duties to be performed by the debtor was given to the defendant Norma Ann Dowell by regular mail. It was further shown that the notices and orders were timely depos-

ited in the mail on each occasion and that they were addressed correctly to the address at which debtor admits during the time periods in question to residing with her husband. The defendant's defense is a simple one: she claims that she did not receive any of the notices. Although they were mailed to her correct address, she admits, she did not receive any of them or know of any of their contents and she had no idea that she was involved in a bankruptcy proceeding until she received, belatedly, she contends, the order setting a hearing on the within complaint to deny discharge. She states that she knew that her husband was involved in a bankruptcy proceeding and assumed that all matters which came in the mail from the bankruptcy court and the district court were solely concerned with that bankruptcy. She further states that her husband, although he must have been the person who received the mail and opened it, did not on any occasion confide to her any of the content of the orders of this court or the bankruptcy court until he let her know of the setting of the hearing on the within complaint objecting to discharge. Although granted an explicit opportunity to do so, the defendant declined to call her husband as a witness in this case. The files and records in this case show that no fewer than 11 different pleadings and orders were mailed to the defendant at the address at which she admits to have resided during the time periods in question and that none was returned. Otherwise, the files and records in these cases purport to show that, at least on one occasion, the defendant filed a 'waiver of exemptions' with the court on September 26, 1985, thus indicating that she knew or should have known of her status as a debtor in title 11 proceedings prior to the time of the initial order setting a hearing in these objections to discharge, which is, according to her current contentions, the first she knew of the bankruptcy proceedings.... 'Where notice has been mailed to the current and current address and the item is not returned, delivery is presumed.' *Matter of Depoy*, 29

B.R. 471, 477 (Bkrtcy.N.D.Ind.1983) ... The debtor does not offer any evidence directly to rebut this presumption. She, in fact, appears to predicate her defense on the assumption that her husband must have received all orders, pleadings and notices and that he failed over a long period of time to tell her about any of them until he told her, or otherwise arranged for her to find out, about the setting of the within complaint objecting to discharge. In this regard, however, the defendant's testimony is simply not credible. In part, this determination is based upon the appearance and demeanor of the defendant as a witness. Further, it tends to be contradicted by the files and records in this case and the natural tendency of a husband to transmit information to a wife in which both of their interests might be vital. Finally, as observed above, the defendant was granted an explicit opportunity to call her husband as a witness and declined to do so ..."

Because, in fact, as of the date of the judgment in that instance, April 15, 1986, this court had no knowledge of the precise status of contempt proceedings which had been earlier initiated in the district court on this court's report and recommendation of May 16, 1985, this court made no mention of those proceedings in its foregoing findings of fact and conclusions of law and in fact considered those proceedings to be irrelevant to the action at bar.

Nevertheless, because the district court considers those proceedings to be highly relevant, their development will be briefly traced. The trustee in bankruptcy in this case, Paul E. Berman, filed a motion to adjudge the debtor Norma Ann Dowell in contempt for failure to file her schedules and statements of affairs in this bankruptcy case. This motion culminated in a report and recommendation transmitted by this court over the signature of the undersigned to the district court on May 16, 1985. That report and recommendation recommended that Norma Ann Dowell be adjudged in civil contempt of court and subjected to such appropriate coercive mea-

sures as would compel her to file her schedules and statements of affairs. It recited the following basic facts, some of which were the same as the basic facts found in this action in support of the judgment denying the discharge in bankruptcy:

"The files and records in these chapter 7 bankruptcy proceedings show that a petition for involuntary adjudication of the debtor under chapter 7 of the Bankruptcy Code was filed on January 28, 1985; that an order for involuntary relief was entered on March 19, 1985; that, on March 19, 1985, the court issued its order that the debtor file her statement of affairs and schedules within 20 days of the date of entry of such order; that, on April 4, 1985, the court consolidated the within proceedings with case no. 83–00364, the proceedings of debtor Douglas Arlen Dowell, husband of Norma A. Dowell, based upon the substantial likelihood of duplicate assets, debts and creditors, and in an effort to promote efficient administration for the benefit of all creditors; that, on April 4, 1985, the court also issued its order that Paul E. Berman and Charles E. Rubin, previously appointed trustees in these separate estates, act as co-trustees in the consolidated estate; that on April 16, 1985, because the debtor had failed to file her statement of affairs and schedules within 20 days of March 19, 1985, as required by the aforementioned order of that date, the court ordered that the debtor Norma A. Dowell appear before the court on May 8, 1985, and then and there show cause why she should not be adjudged in civil contempt of court; and that, in direct contravention of the court's order of April 16, 1985, requiring the debtor's appearance on May 8, 1985, the debtor failed to appear.... For the foregoing reasons, the bankruptcy court will recommend to the district court that the debtor Norma A. Dowell be adjudged in civil contempt for her repeated failure to obey orders requiring her to file her statement of affairs and schedules and to appear and show cause why she should not be adjudged in civil contempt. The material facts recited above are conclusively demonstrated by the files and records of this court and they warrant and necessitate the imposition of coercive measures to secure compliance with orders which are necessary to bankruptcy estate administration."

The report and recommendation of the bankruptcy court thus issued culminated in an adjudication of civil contempt issued by the district court on October 17, 1985, which also stated that the respondent Norma Ann Dowell was:

"fined in the sum of $250.00 payable into the registry of the Court within fifteen (15) days of the date of entry of this order unless the respondent, within the same fifteen (15) days, brings herself into compliance with the Bankruptcy Court's orders by filing with the Court her statement of affairs and schedules."

Thereafter, on January 17, 1986, the debtor filed schedules and statements of affairs. Accordingly, thereafter, on April 21, 1986, some six days after this court had issued its above-described judgment denying discharge in bankruptcy, the district court set aside its contempt order, stating as follows:

"Pending before the Court is debtor's motion to set aside the contempt order. Debtor states that her husband is an attorney who was also going through a bankruptcy proceeding through most of 1985. While debtor lived at the address where the Court notices were mailed, she contends her husband handled the mail and she was unaware she was even involved in a bankruptcy proceeding until she appeared at a Bankruptcy hearing on January 3, 1986. Shortly thereafter, debtor hired her own attorney, and on January 17, 1986 filed her Bankruptcy schedules.

"This situation is similar to the case of *Matter of Depoy,* 29 B.R. 471 (Bkrtcy. Ind.1983) where the court refused to hold a defendant in contempt where it was shown her attorney-husband never consulted with, informed, or otherwise brought the fact of bankruptcy to her attention. In order to find a person in civil contempt, the party accused of contemptuous conduct must be shown to

have had notice or knowledge of the court's order sufficient to put the party on notice of the proscribed (or, in this case, the required) conduct."

The order vacating the civil contempt order was obtained by means of a motion which was not opposed by the trustee in bankruptcy, who had secured the end which he sought, the filing of the schedules and statements of affairs, and who had a right to believe that, under the law, the civil contempt proceedings had ended satisfactorily with the purging of the contempt.[1] There is no indication that a hearing was held.[2]

Consequently, another division of the district court, in determining the within appeal, entered its order on March 25, 1987, remanding this action to this court "to reconsider its judgment" "in light of the district court order setting aside its earlier order holding the debtor-appellant in civil contempt." In that order of remand, the following considerations were stated:

"On April 21, 1986, the district court entered an order setting aside its contempt order against the debtor-appellant. This Court cannot determine to what extent the bankruptcy court relied on the district court contempt order that was set aside on April 21, 1986 (after the bankruptcy order in question was signed) in concluding that debtor-appellant had notice of the orders, that she intentionally refused to obey them and that therefore she was not entitled to a discharge in bankruptcy. Although the basis for the district court's April 21, 1986, order is not entirely clear, there is a suggestion in the order that the district court did not believe that the debtor had been 'shown to have had notice or knowledge of the Court's order sufficient to put the party on notice of the prescribed (or in this case, the required) conduct.' Without clarification from the bankruptcy court about the extent to which its conclusion

was based on the district court's contempt order, I am unable to determine whether the bankruptcy court abused its discretion in denying the debtor-appellant a discharge pursuant to section 727(a)(6)(A)."

The bankruptcy court, on remand of a case from the district court, is obligated to follow the instructions of the district court to the letter. Accordingly, this court must reconsider its judgment of April 15, 1986, 61 B.R. 75, "in light of the district court order setting aside its earlier order holding the debtor-appellant in civil contempt." And this court must consider whether the district court's setting aside the civil contempt order (based on the same material failures of the debtor to obey bankruptcy court orders) has a binding effect upon the court's judgment in this action.

*The binding or nonbinding effect of the district court's determination that the debtor had never been in civil contempt in failing to obey the orders of this court to file schedules and statements of affairs*

▉ The bankruptcy court, in making its report and recommendation to the district court on May 16, 1985, 73 B.R. 47, initiated a proceeding which had as its sole purpose to compel the alleged contemnor's compliance with the orders of the court directing the filing of schedules and statements of affairs. "Civil contempt is coercive rather than punitive. It is intended to make a recalcitrant party comply with an affirmative command of the court." *American Trucking Associations, Inc. v. Interstate Commerce Commission*, 728 F.2d 254, 255 (5th Cir.1984). "The conclusive, most important factor in distinguishing civil and criminal contempt is the purpose of the contempt judgment ... If its purpose is to coerce the contemnor into compliance with the court's order or to compensate for losses sustained, then the proceeding is civil. On the other hand, if

---

**1.** See the principles and authorities set out on pages 1002 and 1003 of the text of this memorandum, *infra.*

**2.** In view of the authority which holds that it is proper to vacate a contempt judgment without a hearing, this court does not infer that the absence of a hearing injected any infirmity into the district court proceedings. See page 1003 of the text of this memorandum, *infra.*

its purpose is to punish or to vindicate the authority of the court, then a proceeding is criminal." *In re Dinnan,* 625 F.2d 1146, 1149 (5th Cir.1980). After the district court issued its contempt order based in part upon the report and recommendation of this court,[3] the debtor complied with this court's directive to file her schedules and statement of affairs. The district court therefore set aside the contempt order. It is appropriate for a court to vacate or set aside a civil contempt order when the contemnor has purged himself or herself of contempt. "The contemnor always has the ability to purge himself of (civil) contempt by obeying the court order." *Wolfe v. Coleman,* 681 F.2d 1302, 1306 (11th Cir. 1982). "Accordingly, if (the contemnor purges himself or herself of contempt), the court will exercise its discretion to vacate the order of contempt." *In re Rosahn,* 553 F.Supp. 1043, 1045 (S.D.N.Y.1983). "(T)he judge may in his discretion modify his (contempt) judgment, based upon whatever rational considerations appeal to him ..." *In re Cueto,* 443 F.Supp. 857, 863 (S.D.N.Y. 1978). And the contempt order may properly be vacated without a hearing. *In re Grand Jury Investigation,* 600 F.2d 420, 428, (3d Cir.1979). Nevertheless, the provisions of section 727(a)(6)(A) of the Bankruptcy Code permit the bankruptcy court to predicate denial of discharge on an intentional contempt, even though the contempt may have been purged by the time the bankruptcy court enters its order denying the contemnor's discharge. In *In re Jones,* 490 F.2d 452, 456 (5th Cir.1974), for instance, it was held that an initial failure to make disclosures in schedules could conceivably constitute a ground for denial of discharge, if intentional and to the preju-

dice of creditors, or an affront to the dignity of the court, even though the schedules were later amended to supply the disclosure. In that case, discharge was not denied because the court found that the failure was "not due to wilful, intentional disobedience, but rather to inadvertence and mistake." 490 F.2d at 456. But the basis of the opinion is that an intentional failure to obey the orders of the court would provide a ground for denial of discharge even after the initial contempt is purged. Similarly, in *In re Kokoszka,* 479 F.2d 990, 998 (2d Cir.1973), it was held that disobedience of an order of the bankruptcy court might constitute a ground for denial of discharge even though there might be "some way that the bankrupt could make amends for his conduct." It was held that, although the "referee might *consider* granting a discharge if the petitioner turns over to the trustee the amount of his refund check," (emphasis added) that result would not be compelled by the law.

It is true that, in this matter, the district court, in setting aside the contempt order after the debtor had purged herself of contempt, made findings to the effect that any violation of the bankruptcy court's order had been unintentional. But the issue of intent was not properly the subject of that proceeding as it is in the case at bar. "Intent is not an issue in civil contempt proceedings." *Donovan v. Mazzola,* 716 F.2d 1226, 1240 (9th Cir.1983), and decisions there cited. Rather, inability to comply is the recognized defense.[4] But, in proceedings under section 727(a)(6)(A) of the Bankruptcy Code, intention is a vital and indispensable element, as the decisions cited above make clear.[5]

---

**3.** It must be observed that the district court contempt order was also based in part on the debtor's failure either to appear or to answer a show cause order which was interposed by the district court.

**4.** When the protagonist of a contempt motion makes a showing that an order of a court was not complied with, "(t)he individual (alleged contemnors) then bore the burden of demonstrating that they were unable to comply." *Donovan v. Mazzola,* 716 F.2d 1226, 1240 (9th Cir. 1983). The district court, in making its ruling that the debtor had no knowledge of the orders

which she was charged with violating actually ruled on the issue of intention (which "presupposes knowledge," see Black's Law Dictionary, p. 947 (1968)) which is not relevant to civil contempt proceedings once the contemnor has purged himself or herself from contempt by obeying the order.

**5.** "To deny discharge to one seeking shelter in the safe harbor of the Bankruptcy Act merely because of this type of mistake of counsel, especially where no prejudice or harm results to the creditors, would impose a kind of strict liability

■ Accordingly, under ordinary principles of *res judicata* or collateral estoppel, this court, in making the determination of whether the debtor's discharge should be denied would not be bound by any finding made by the district court in the civil contempt proceedings that the debtor had no intent to disobey the orders of the bankruptcy court.[6] For intent, technically speaking, was not a legitimate issue in the civil contempt proceedings.

Further, this court would be entitled, under well established principles, to determine the intent of the debtor, under the circumstances of this case, from her credibility as a witness, from her appearance and demeanor on the stand (an opportunity which the district court did not grant to itself in dismissing the civil contempt action) and from the other circumstantial evidence. Under these principles, the bankruptcy court certainly need not accept the debtor's contention that she in fact never saw the orders of the court of which she was accused of violating. Rather, the bankruptcy court, like any trial court, is free to disbelieve her testimony on the basis of her appearance and demeanor. And, under the ordinary standard of review, that determination would not appear to be, under any imaginable usual circumstances, overturnable on appeal. "(T)he District Court (bears) the same relationship to the Bankruptcy Court as (courts of appeal) usually do to the District Courts—it sits as an appellate tribunal, not as a finder of fact. The deference owed by appellate courts to finders of fact is at its highest where the issue turns on resolution (of the testimony of) live witnesses," *In re Windle*, 653 F.2d 328, 331 (8th Cir.1981), or in gauging the credibility of witnesses in the ordinary objection-to-discharge proceeding. "Because the Referee is in a superior position to make the proper determination of any issue of fact, it has been held that he has broad discretion in granting or denying discharge." *In re Brown*, 314 F.Supp. 947, 954, 955 (W.D.Ark.1970), affirmed, 444 F.2d 49 (8th Cir.1971).[7] This appears to be especially so in the case at bar, in which the circumstantial evidence [8] strongly sup-

---

Congress could never have intended." *In re Jones*, 490 F.2d 452, 457 (5th Cir.1974).

**6.** To say that the principle of *res judicata* does not apply requires no citation of authority, for the plaintiff in the action to deny discharge was different from the movant in the contempt proceedings and there never has been any contention of privity between them, nor could there be. And, for the reasons stated in the text of this memorandum, the actions were different also—the civil contempt action in the district court had as its purpose the securing of compliance with the court's orders while the objection to discharge in this court had as its goal the punishing of the debtor for past failure to obey such orders. And collateral estoppel also applies only issues already determined "between the same parties or their privies." 1B Moore's Federal Practice para. 0.405(3), p. 194 (2d ed. 1984).

**7.** A signal characteristic of decisions, prior to the decision of the district court in the action at bar, in determining an appeal from a bankruptcy court's grant or denial of discharge has been the employment of a standard of review which grants great latitude to the bankruptcy court. "The right to a discharge in bankruptcy is addressed to the sound discretion of the bankruptcy court, and appellate courts should interfere only for the most cogent, compelling reasons in situations of gross abuse." *In re Jones*, 490 F.2d 452, 455 (5th Cir.1974). "The general rule is

that the right to a discharge is left to the sound discretion of the bankruptcy court ... and that an appellate court will not interfere with the decision of a bankruptcy court to grant (or deny) a discharge unless there is a 'gross abuse of discretion.'" *In re Suttles*, 819 F.2d 764, 766 (7th Cir.1987). The district court in this action, however, has made clear its intent to substitute the district court's finding of absence of intent for this court's finding of intent if the factual bases of the two actions are the same. This constitutes review more stringent than the usual "clearly erroneous" standard of review ordinarily applied in bankruptcy cases which permits *de novo* review only of conclusions of law and review of factual findings on condition that they be disturbed only if the reviewing court is left with a firm and definite conviction that a mistake has been made. Nor, according to the standard authorities, does the "clearly erroneous" standard permit *de novo* review of the ultimate, as opposed to subsidiary, findings of fact. "Even when a district judge finds an 'ultimate fact,' a court of appeals is in error when it makes its own finding, for the 'clearly erroneous' standard under Rule 52(a) applies to all findings, including findings of ultimate facts." 5 K. Davis, *Administrative Law Treatise* para. 29:5, p. 352 (2d ed. 1984).

**8.** It is too well established to require citation of authority that the element of intention is seldom shown by direct admission of the party who is

ports an inference that the court's orders were intentionally violated. This is true, not only because, as this court formerly found, that it is unlikely that the debtor could have effectively avoided knowledge of so many written communications sent by the court to her proper address, but also because of the timing of her sudden recognition that she should repair to the court to seek relief from the order which denied her discharge in bankruptcy. This sudden recognition took place at a time when debtor and her spouse, who was also a debtor in bankruptcy proceedings,[9] had effectively avoided the claiming of their entirety property by the co-trustees, such as might have been possible had schedules and statements of affairs been timely filed.[10]

And the lesson which not denying the discharge would teach to other debtors and potential debtors is one of gravity and great moment—that they might avoid the obligations imposed upon them by the Bankruptcy Code simply by averring that they were not conscious of them and that, if they so aver, in all likelihood, the bankruptcy court must accept their statements as true and correct.[11]

## II

█ Despite the foregoing considerations, however, this court is bound by the doctrine of "law of the case"[12] faithfully to follow the instructions which have been handed down by the district court in its order of remand. In so doing, this court can only set aside its former judgment denying discharge if it in any critical re-

spect relied on the facts which underlay the district court's contempt order which was ultimately set aside. And, in reality, there can be little doubt that the instructions issued by the district court are intended to cause this court to set aside its order denying discharge. For, as the following passage from its order of remand reveals, this court is expected not only to conclude that it relied in material part on the facts underlying the district court's order of contempt (for, after all, they are the same findings of fact which this court reported to the district court in recommending the contempt adjudication and materially, as the record plainly reveals, the same facts upon which the denial of discharge was predicated), but also to accept the district court's finding of absence of intent as binding upon it:

"Without clarification from the bankruptcy court about the extent to which its conclusion was based on the district court's contempt order, I am unable to determine whether the bankruptcy court abused its discretion in denying the debtor-appellant a discharge pursuant to section 727(a)(6)(A)."

Thus, unless this court can justify its judgment on facts which are wholly different from those which provided the basis for the district court's contempt citation (which was later set aside), the entry of a judgment denying discharge would be an abuse of discretion because it would fly in the face of the district court's later finding of absence of intent. It would not be imaginable how, otherwise, the consideration of

charged with it; rather, the court may derive such intention from the circumstantial evidence which exists.

9. With which these bankruptcy proceedings were utimately consolidated, in an effort of co-trustees to locate and claim such entirety property as they could find under the rule of *Matter of Anderson*, 12 B.R. 483 (Bkrtcy.W.D.Mo.1981). But the delay in the filing of schedules and statements of affairs may well have been sufficient to prevent some property to be disposed of prior to the filing of those schedules and statements of affairs. Thus, entirety property could not be claimed by the trustees until some indication of its existence and location was filed by the debtor; and, before that time, there was no insurance that it did not disappear.

10. See note 9, *supra.*

11. That, in substance, is the ruling of the district court, which has made clear its intent to substitute the district court's finding of absence of intent for this court's finding of intent of the factual bases of the two actions are the same.

12. "Under the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." 1B Moore's Federal Practice para. 0.404(1), p. 117 (2d ed. 1984).

whether the facts underlying this case are the same as those underlying the contempt case would be pertinent.[13] This court therefore has little alternative but to accept and obey the instructions of the district court and set aside its order denying the debtor's discharge in bankruptcy. For the district court has directed that, if the two cases are based upon the same material facts, even though principles of *res judicata* and collateral estoppel may not be applicable, then the district court's finding of absence of intent must be substituted for the bankruptcy court's finding of existence of intent.[14]

## III

Yet, this court might not have done so if the only issue to be considered were the likelihood of reversal. In the past, and hopefully right up through the present time, this court has struggled in every case to act according to its view of the law and the facts and its own conscience whatever the political risk and whatever the likelihood of reversal. But there is an added consideration of great moment in this case. The district court, in imposing a *de novo* review upon the findings of this court, thereby directly considered the subject matter of this case to be directly within its own judicial competence. Nevertheless, it remanded the case to this court, not for the submission of recommended findings of fact and conclusions of law to the district court, but rather for this court to "reconsider its judgment" and enter a new judgment. It is a recognized juridical principle that reviewing courts apply looser stan-

dards of review to decisions of specialized governmental agencies whose particular expertise is considered by that court to be remote from its own competence. On the other hand, the stricter the standards of review applied, the more directly the subject matter is within the competence of the reviewing court. And, when reviewing courts actually substitute their findings for those of the lower courts, the competence of the two courts, at least with respect to the subject matter of the case involved, must be regarded as equal. "Courts usually substitute judgment on the kind of questions ... that are within their special competence, but on other questions they limit themselves to deciding reasonableness." 5 K. Davis, *Administrative Law Treatise* section 29.1, p. 332 (2d ed. 1984). This principle is recognized in the distinction between "core" cases and "related" cases under the Federal Judgeship and Bankruptcy Amendments Act of 1984, under which *de novo* review is reserved for "related" decisions because they are directly within the district court's competence.[15] Accordingly, to direct this court to render a judgment on an issue which the district court considers to be so directly within its competence that its findings must supersede those of this court is to direct that this court exercise the power of the district court—the federal judicial power under Article III of the Constitution of the United States.[16]

This is an issue—the exercise of the federal judicial power by the bankruptcy court—which has been previously con-

---

**13.** Ordinarily, it can be assumed that the facts found in one case are relevant to another case only if they are to have a binding effect on the latter case.

**14.** See note 11, *supra.*

**15.** Thus, with respect to "related" cases, on which a bankruptcy judge makes recommended findings of fact and conclusions of law to a district court, "the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected" may render his own decision. Section 157(c)(1), Title 28, United States Code. But he cannot re-confide the matter to

the bankruptcy judge for the making of a determination so long as the issue is one of contempt —or enforcement, otherwise, of the court's orders and judgments—see *Matter of Richardson,* 52 B.R. 527 (Bkrtcy.W.D.Mo.1985), or arises under state law. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). With respect to other types of related cases, however, reference to the bankruptcy court for determination may be possible. See *Matter of Golden Gulf, Ltd.,* 73 B.R. 685 (Bkrtcy.E.D.Ark.1987).

**16.** See also *Northern Pipleline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the plurality opinion in which implies the same.

sidered at some length by this court in prior opinions. In those opinions, this court has observed that, under the rule fixed by the Supreme Court's decision in *Glidden Co. v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), "it has in the past been held that a court initially created as a non-Article III court may 'mature' into an Article III court by reason of being assigned a portion of the federal judicial power." *Matter of Richardson*, 52 B.R. 527, 534 (Bkrtcy.W.D.Mo.1985). See also *Kalaris v. Donovan*, 697 F.2d 376, 385 (D.C.Cir.1985), to the effect that, in determining the proper classification of a court as an Article III court or a non-Article III court, "it is not what Congress says but what powers Congress vests in the adjudicatory body that counts." And, in respect of the matter at bar, it would seem that a case having as its character an involvement of the special competence of the district court would constitute a "related" case which could be assigned to the bankruptcy court for the purpose of entering judgment only at the risk of interpreting the statute to confer Article III powers on the bankruptcy court.

■ There is some support for this conclusion in case decisions made in the federal courts of appeal. In *Kalaris v. Donovan, supra*, it was observed that it is an indicia of Article III power that a court has the power to enforce its own judgments.[17] "And it is precisely the power to enforce and effectuate its orders and judgments which is said, in the aftermath of the *Marathon* decision ... to distinguish the Article III court from the non-Article III court." *Matter of Richardson, supra*, at 533. There can be little doubt that the power of the bankruptcy court to deny discharge for refusal to obey its lawful orders is a form of a power to enforce or effectuate the bankruptcy court's own judgments. In fact, as observed above, the power is a form of the contempt power. It is said that the power under section 727(a)(6)(A), *supra*, to deny discharge is one under which "(c)ontempt of court, provided the order ignored was lawful, provides a basis for an objection to discharge." 4 Collier on Bankruptcy para. 727.09, p. 727–77 (15th ed. 1987). And, most recently, in *In re Sequoia Auto Brokers Ltd., Inc.*, 827 F.2d 1281 (9th Cir.1987), it was held that the bankruptcy court has no statutory authority to make contempt adjudications and therefore must derive its power from the inherent power of the district court by initiating any necessary contempt action by making recommended findings of fact and conclusions of law to the district court as prescribed in section 157(c)(1), Title 28, United States Code.[18] If it would peradventure be stated that the provisions of section 157(b)(2)(J) of the same title, in confiding "objections to discharge" to the "core" jurisdiction of the bankruptcy court, provide a satisfactory statutory basis for the bankruptcy court judgment in this action, even though it must find its basis in contempt powers, the literal language of the court in the *Sequoia* case, *supra*, is to a contrary effect:

"We are not persuaded that in giving bankruptcy judges authority over core proceedings Congress also gave them contempt power in those proceedings ... Absent indications of congressional intent to confer the contempt power in core proceedings, and in view of Congress's repeal of both sections limiting civil and criminal contempt in the 1978 Act, we refuse to infer the grant of the power in such proceedings. Nor are we convinced that the exercise of the contempt power

---

17. See also *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the plurality opinion in which implies the same.

18. "Based on Congress's intent in the 1984 Amendments to cure the overly broad jurisdictional grant to the bankruptcy judges in the 1978 Act and on our conclusion that bankruptcy judges' exercise of the civil contempt power is not express or implied in the new Congressional enactments, we hold that Congress has not conferred the civil contempt power on bankruptcy judges. We conclude that the bankruptcy judge had no jurisdiction to issue the contempt order. Therefore, the bankruptcy court judge must, as under earlier bankruptcy procedure, certify the facts to the district court to review de novo and determine whether to issue the order." 827 F.2d at 1290–91.

can be defined as itself a core proceeding ... Justifying the exercise of the contempt power by defining it as a core proceeding ignores the rationale for the core-noncore dichotomy; to avoid the constitutional difficulties created by *Northern Pipeline.*" 827 F.2d at 1289. Further, if the statute does in fact contemplate the determination of section 727(a)(6)(A) issues, it would run afoul of the imprecation against conferring Article III powers on non-Article III courts, under the district court's interpretation of the standard of review to be applied.[19] Thus, the district court's order of remand directs that the bankruptcy court enter its judgment on a "related" issue, according to its own analysis.

This court has been confronted with similar issues on prior occasions and has, insofar as is possible, declined the opportunity to exercise Article III powers. "Congress and the higher courts had to be circumscript in delegating powers to the bankruptcy court lest they by indirection confer Article III powers on the bankruptcy court. Accordingly, the bankruptcy court must be circumscript in interpreting the law delegating powers to it lest it be accused of arrogating Article III powers to itself." *Matter of Richardson, supra,* at 533. "The bankruptcy courts, under such circumstances, have an interest equal to that of the district court in preventing Article III status from being conferred by accident and without a rational and direct decision by the appropriate branch of Government." *Matter of Golden Gulf, Ltd.,* 73 B.R. 685, 689 (Bkrtcy.E.D.Ark.1987). It has been the practice of this court, consequently, to decline to exercise such power when it would not be unjust to do so.[20] And that is the case at bar, in which, as observed above, the district court's order of remand has in fact dictated the result in this case and the denial of the complaint objecting to discharge, consequently, may be looked upon either as a declination of jurisdiction[21] or

as a determination of the merits contrary to the plaintiff, or both.[22] The technicalities dwarf to insignificance when the standard of review imposed by the district court is of the greatest strictness and the indications that the former judgment cannot stand are so great that for this court to hold to the contrary would be to raise a slender and talismanic tassel into a raging whirlwind which is certain to tear it to shreds.[23]

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that, on reconsideration, the complaint of plaintiff objecting to discharge be, and it is hereby, denied. And it is accordingly, further,

ORDERED, ADJUDGED AND DECREED that the debtor Norma Ann Dowell be, and she is hereby, granted a discharge in bankruptcy.

## MEMORANDUM OF CONSIDERATIONS SUPPORTING ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF FINAL JUDGMENT GRANTING DISCHARGE IN BANKRUPTCY

Formerly, on December 16, 1987, pursuant to the district court's order of remand of this court's former judgment denying discharge in bankruptcy, this court obeyed the district court's instructions and reconsidered that former judgment and, on reconsideration, granted the defendant's discharge in bankruptcy. This was done in strict compliance with the district court's instructions, which were to determine whether this court, in entering its former judgment denying discharge, had relied to any material extent on the facts which underlay a civil contempt judgment which had earlier been entered against the defendant by the district court (on the recommendation of the undersigned made pursu-

---

**19.** Cf. note 7, *supra.*

**20.** Cf. the latter portion of note 15, *supra.*

**21.** Cf. note 18, *supra.*

**22.** Thus, the decision in this case rests separately and independently on the several grounds enunciated in the text of this memorandum.

**23.** Cf. notes 7 and 18, *supra.*

ant to Section 157(c)(1), Title 28, United States Code), but which had later been set aside by the district court with a finding that there had been no intentional disobedience of this court's orders to file schedules. The court's own files and records plainly demonstrated that the facts which underlay both the contempt proceeding and the within complaint for denial of discharge were materially the same. Thus, under the *res judicata* or collateral estoppel doctrine being employed by the district court,[1] this court had no choice but to set aside its former judgment.

In so doing, however, this court observed that, ordinarily, a judgment in a civil contempt proceeding has no binding effect on a proceeding, whose purpose, like the objection to discharge at bar, is to punish for a past contempt.[2] But, the court also observed that, under the applicable doctrine of "law of the case," it could only follow the district court's directions and hold the district court order, and its finding of absence of intention, to be binding on the bankruptcy court in this case.

Accordingly, the plaintiff, in its motion for reconsideration filed December 28, 1987, contends that this court should forsake the doctrine of "law of the case" in favor of holding that the district court's finding and final order in the civil contempt case are without binding effect. Plaintiff, however, does not and cannot contend that "law of the case" is an inapplicable doctrine. And, under such circumstances, the governing authorities hold that an inferior court is absolutely without power to contradict the ruling of the superior and reviewing court. See 1B Moore's Federal Practice, Paragraph 0.404[1], p. 118 (2d ed. 1984), to the following effect:

"A Court that makes a decision has the power to reconsider it, so long as the case is within its jurisdiction. But after the law of the case is determined by a superior court, the inferior court lacks authority to depart from it, and any change must be made by the superior court that established it, or by a court which it, in turn owes obedience."

■ The doctrine of "law of the case," like the related principles or *res judicata* and collateral estoppel,[3] binds the inferior court as to issues determined in the superior court even if only incompletely or defectively presented by the parties in that court.[4] In this case, the plaintiff, in briefing the applicability of the doctrine of *res judicata* on appeal, appears to have admitted the doctrine to be applicable so long as the civil contempt judgment precedes the punitive contempt judgment.[5] But, if *res*

1. The district court's remand to this court contained instructions to determine the extent to which the civil contempt action and the action at bar were based on the same facts. Virtually the only conceivable purpose of such a determination would be to determine whether the judgment in the former action was binding on the latter.

2. "[A] civil contemnor may purge himself of contempt at any time by compliance ... The purpose of an order of criminal contempt, on the other hand, is punitive. It is imposed to vindicate the court's authority ... Accordingly, compliance with the court's command will not lift the sanction. In responding to a single contemptuous act, a court may well impose both criminal and civil sanctions—wishing to vindicate its authority and compel compliance." *In re Irving*, 600 F.2d 1027, 1031 (2d Cir.1979), cert. denied sub nom *DiLapi v. Irving*, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979).

3. "This principle [of law of the case] has sometimes been thought of as a variety of the res judicata principle, and in the context of successive appeals thought to rest on jurisdictional

principles." 1B Moore's Federal Practice, Paragraph 0.404[1], p. 117 (2d ed. 1984).

4. "If circumstances arise that cast doubt on the correctness of the law of the case as established on appeal, arguments in support of departure must be addressed to the appellate court, either in a petition for rehearing, or if the time for filing a motion for rehearing has passed, by motion for recall of the mandate, or on appeal from the judgment rendered after completion of the proceedings for which the case was remanded." 1B Moore's Federal Practice, Paragraph 0.404[10], pp. 171–172 (2d ed. 1984).

5. "Despite defendant's contention to the contrary, the trial court's April 15, 1986, factual findings relating to defendant's receipt of district court orders/notices are *not* made moot or invalid by the district court's *subsequent* setting aside of the prior finding of contempt." Plaintiff–Appellee's brief on appeal, p. 6. (Emphasis in original)

*judicata* is applicable, then a final judgment reversing or setting aside a former judgment in the same case controls the same issue meantime decided between the same parties in another case.[6] It seems strange to this court that plaintiff, having admitted the applicability of *res judicata* to the reviewing court, should now ask this court—which now has no power to do so—to hold to the contrary. The issue, as has been observed in the court's former opinion filed December 16, 1987, has been decided by the district court.

The bankruptcy court agrees, of course, with each and all the general principles asserted by the plaintiff, but it is now the district court to which those principles must properly be asserted, not this court. The authorities, as this court has previously observed, have ordinarily granted the bankruptcy court a broad discretion on the subject of denial of discharge in recognition of the specialized expertise which such courts ordinarily bring to bear on this issue. In this case, for instance, the bankruptcy court might well have considered that the granting of a discharge in bankruptcy to defendant would have the unseemly effect of actually negating the denial of discharge to her husband in a separate bankruptcy case.[7] But the exercise of this discretion in this case now rests with the district court, not this court.[8]

Accordingly, for the forgoing reasons, this court will issue its order on even date herewith denying the plaintiff's motion for reconsideration.

**6.** "A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel. The same is true of a judgment vacated by a trial court." 1B Moore's Federal Practice, Paragraph 0.416[2], p. 517 (2d ed. 1984). If a judgment in a second case has meantime been entered which gives *res judicata* effect to the vacated judgment, it may be reversed on direct appeal or subjected to attack under Rule 60(b)(5), F.R.Civ.P. See *id.* at p. 514.

**7.** See, e.g., *In re Magee*, 415 F.Supp. 521, 427 (W.D.Mo.1976) (The discharge in bankruptcy of only one of a husband-or-wife has the effect of discharging their joint debts, even as it removes their joint property beyond the reach of creditors).

**8.** These same principles apply to the issue of the district court's appellate jurisdiction, which is within the power of that court to determine. This court is not knowledgeable as to the status of the briefing of that issue in the district court, but it appears that the appeal taken from the initial judgment of April 16, 1986, denying the defendant's discharge was not timely filed, as it was more then ten days thereafter. The district court, in ruling on this issue, seems simply to have held that the judgment was not entered until April 22, 1986, and that the ten-day appeal time did not run until ten days after that date. It is not clear whether it was brought to that court's attention that the docket sheet contains a clear and definite statement to the effect that the "date of entry" was April 16, 1986. The appellant apparently contended that another entry—"EOD 4/22/86"—established the date of entry as April 22, 1986. It seems, however, that a docket sheet, like any other document should be interpreted according to the plain meaning which its unequivocal portions convey. The content of the docket sheet seems unequivocally to establish April 16, 1986, as the "date of entry" of the judgment. It would require extrinsic evidence to establish what "EOD" means. But when "date of entry" is unambiguous, extrinsic evidence would seem to be inadmissible. The court has not yet been able to find a decision which explicitly approves the practice of the clerk's later assigning a date of entry which contradicts both the "date of entry" on the docket sheet and the filing stamp on the final judgment—an indicia of finality which the parties ordinarily rely upon in determining when a notice of appeal should be filed. The practice of advertising to the parties—by means of a filing stamp and a "date of entry" on the docket sheet—that one date is the date from which the appeal time should run, when covertly the clerk actually determines that another date, later entered on the docket, should control, obviously leaves the process subject to many imaginable abuses.