**EMPRESAS OMAJEDE, INC., Appellant,**

v.

**LA ELECTRONICA, INC., et al., Appellees.**

**No. Civ. 98–1771(JP).**

United States District Court, D. Puerto Rico.

Dec. 15, 1999.

Carlos A. Surillo–Pumarada, Charles A. Cuprill–Hernández Law Offices, Ponce, P.R., for plaintiff.

Michael Trías–Fraticelli, Hato Rey, P.R., Antonio A. Arias–Larcada, McConnell Valdés, San Juan, P.R., José F. Cardona–Jiménez, Hato Rey, P.R., Fernando Van Derdys, Fiddler, González & Rodríguez, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

Before the Court is Empresas Omajede's Brief on Appeal (**docket No. 8**) seeking the reversal of several rulings made by the Bankruptcy Court and the District Court in its adversary proceeding against La Electrónica, Inc. 90–0151(ESL)

and 92–2513(GG). The instant appeal is the latest stop in a protracted litigation between Empresas Omajede, Inc. ("Omajede") and La Electrónica, Inc. ("LEI"), both of which are closely held corporations owned by members of the Betancourt family.

Incorporated in June 1978 for purposes of investing in real estate, Omajede is owned by five individuals: Reinaldo Betancourt Viera ("Betancourt Viera"), Olga Capó Román, María Luisa Betancourt, José Antonio Betancourt, and Delfina M. Betancourt. Olga Capó Román is Betancourt Viera's ex-wife, with whom she has two children, José Antonio Betancourt and Delfina M. Betancourt. María Luisa Betancourt is the daughter of Betancourt Viera from a previous marriage. LEI's sole shareholder is Betancourt Viera.

In 1978, Omajede acquired its only asset, the parcel upon which LEI's building was erected. LEI originally acquired this parcel in 1966 from Colegio Hostos Realty Corp. ("Hostos"). Although the parcel remained under name of Hostos, LEI purchased Hostos' capital stock on March 30, 1966 for $193,785.00. On that same date, Hostos elected a new board of directors with Betancourt Viera at the helm. The Hostos board also approved the mortgaging of the parcel to finance the construction of LEI's building. Subsequent votes approved other loans to finance construction.

By 1978, LEI's building was finished and in operation. At that time, LEI decided that a new corporation should be formed to transfer the ownership of its building. On June 9, 1978, Omajede was formed. On June 14, 1978, Hostos conveyed the building to Omajede for the sum of $3,300,000.00 and the title was duly registered in the Puerto Rico Registry of Property under Omajede's name.

On September 5, 1978, Omajede entered into a lease agreement with LEI, by which the latter leased LEI's building for 10 years at $650,000.00 per year, with an

option to renew for five years with 5% increases in rent each year. Rental income was fixed to offset the building's mortgage payments, insurance, property taxes, and maintenance payments.

In early 1987, the lease agreement was amended whereby the annual rent for the first three years would be $700,000.00 and $750,000.00 for the next five years ("the 1987 lease agreement").

On July 13, 1990, Omajede filed a petition for relief under 11 U.S.C. Chapter 11 and as of that date has been operating its business and managing its affairs as "debtor-in-possession" under 11 U.S.C. §§ 1107 and 1108. On December 4, 1990, Omajede filed adversary proceedings, 90–0151(ESL), at the U.S. Bankruptcy Court for the District of Puerto Rico against LEI, seeking to have the 1987 lease agreement declared null and void.

On April 4, 1991, Omajede filed an Amended Complaint adding Betancourt Viera, Olga Capó and Banco de Ponce (now Banco Popular de Puerto Rico) as Defendants. Omajede divided its Amended Complaint into 7 causes of action.

The first and second causes of action deal with Omajede's contention that the 1987 lease agreement is null and void for lack of consent, fraud, duress, coercion, and deceit on the part of LEI and Betancourt Viera. The third cause of action deals with equitable subordination and constructive trust, whereby Omajede sustains that the property received by Betancourt Viera and LEI, namely the income received from the subleases in the building, constitutes a constructive trust for the benefit of those that were intended to be defrauded. Omajede also alleged that all interests and rights of Betancourt Viera and LEI over the rights and property so received are equitably subordinated to the rights of those that were intended to be defrauded, namely, Omajede's creditors and stockholders, and that such property must be turned over pursuant to 11 U.S.C. § 510.

Omajede's fourth cause of action sought damages against LEI and Betancourt Viera for the fraudulent actions undertaken by them in the execution of the fraudulent 1987 lease agreement. The fifth cause of action sought that LEI be precluded from setting off any amounts owed to Omajede since 11 U.S.C. § 553 and the applicable non-bankruptcy law does not provide for set-offs. Omajede's sixth and seventh causes of action state that since LEI never recorded its lease with Registry, the same is not perfected and can be avoided pursuant to 11 U.S.C. § 544(a)(3). Omajede's eighth cause of action requested that Banco de Ponce be declared not to have a perfected lien over Omajede's rents or receivables or be adequately protected by its interest in Omajede's real estate.

On December 14, 1990 and on July 26, 1991, LEI filed motions to dismiss Omajede's Complaint and Amended Complaint, arguing that the issue of the validity of the lease between LEI and Omajede was previously adjudicated in LEI's bankruptcy case and therefore, the approval of LEI's assumption of the lease is res judicata in Omajede's own bankruptcy case. On October 23, 1991, LEI filed a second motion to dismiss alleging that Omajede could not claim damages arising from pre-petition fraudulent actions.

On July 23, 1991, Betancourt Viera filed with the Bankruptcy Court a motion to dismiss for lack of jurisdiction, stating that he had an absolute right to a jury trial of Omajede's claim against him. On August 21, 1992, Omajede filed a motion for partial summary judgment as to the sixth and seventh causes of action, requesting the avoidance of the lease contract pursuant to 11 U.S.C. § 544(a)(3) and requesting an expedited hearing, together with a memorandum of law and a statement of uncontested facts.

On September 24, 1992, Bankruptcy Court issued an Opinion and Order stating that the case constituted a non-core proceeding pursuant to 28 U.S.C. § 157(b)(2) for which Betancourt Viera had a right to

a jury trial, and recommended that the reference of the action be withdrawn to the District Court for cause under 28 U.S.C. § 157(d). The Bankruptcy Court denied LEI's motion to dismiss the Amended Complaint because LEI assumed the lease in its bankruptcy proceeding and Omajede was not precluded from rejecting or challenging the validity of the same lease contract in its own bankruptcy proceedings.

On October 23, 1992, the Clerk of the Bankruptcy Court issued a certificate to withdraw the reference of the adversary proceeding to the District Court and was assigned Civil Number 92–2513(GG).

Omajede filed on February 2, 1993 a Motion Reiterating Request for Entry of Partial Summary Judgment as to its previous Motion for Summary Judgment as to 11 U.S.C. § 544 regarding the sixth and seventh causes of action.

On February 2, 1993, Omajede filed in the District Court case, a motion for an expedited hearing regarding the validity of the lease agreement with LEI. On March 17, 1993, LEI filed its answer to Omajede's Amended Complaint, and filed a counterclaim against Omajede alleging ownership of the LEI building. On November 24, 1993, Omajede filed a motion to dismiss and/or summary judgment as to LEI's counterclaim, which LEI opposed on January 24, 1994.

On August 23, 1995, the District Court issued an opinion and order accepting the Bankruptcy Court's recommendation to withdraw the reference and proceeded to resolve the various pending motions. The District Court granted Omajede's motion on the issue of its rightful ownership of the LEI Building stating that LEI was estopped from litigating that issue. The District Court also held that a valid lease existed between Omajede and LEI. Core issues were to be resolved by the Bankruptcy Court and were remanded. The District Court remanded the case to the Bankruptcy Court in order for Omajede to proceed with the action to avoid the lease

agreement pursuant to 11 U.S.C. § 544 (Omajede's sixth and seventh causes of action).

On October 27, 1995, Omajede filed with the District Court a motion to reopen time for appeal sustaining that a portion of the District Court's opinion and order was in clear error since Omajede never filed a motion for summary judgment in reference to the validity of the 1987 lease contract. LEI filed an opposition on November 11, 1995, stating that the District Court finally adjudicated all questions regarding the validity of the lease between Omajede and LEI and that res judicata precluded further litigation of the lease validity issue. The District Court entered order denying Omajede's motion because its opinion and order was not final since judgment had not been entered, and therefore, was not an appealable order. The Court added that once the proceedings in the Bankruptcy Court were finalized and judgment entered, the parties would have the opportunity to appeal.

Omajede filed with the Bankruptcy Court a memorandum of law in support of its summary judgment motion under 11 U.S.C. § 544(a)(3). The Bankruptcy Court held a hearing in which it granted Omajede's pending motion for partial summary judgment under 11 U.S.C. § 544(a)(3) to avoid the lease agreement and held that having found the contract to be avoidable, LEI could request damages as of the date of Omajede's Chapter 11 petition as set forth in 11 U.S.C. § 502(g). Judgment was entered on April 9, 1996 and the Bankruptcy Court scheduled a pretrial hearing on the issue of LEI's damages.

The pending matters before the Bankruptcy Court related to Omajede's request for estimation of LEI's administrative claim and LEI's motion requesting allowance of administrative expenses, and LEI's request for alleged damages resulting from the avoidance of the lease contract under Section 544.

On May 12, 1997, the Bankruptcy Court entered an order in Omajede's case, granting LEI's third motion for allowance of administrative expenses and request for payment. On June 4, 1997, Omajede filed in its general bankruptcy case, a motion for reconsideration of the May 12, 1997 order, and requested that LEI's request for damages resulting from the avoidance of the 1987 lease contract under 11 U.S.C. § 544(a)(3) be dismissed for LEI's failure to comply with the time-table fixed by the Bankruptcy Court on August 7, 1996.

On June 23, 1997, Omajede filed with the Bankruptcy Court in the adversary case, a motion requesting an order dismissing LEI's claim for damages as a result of the avoidance of the 1987 lease contract. On that same date, Omajede also filed a motion to modify law of the case, in reference to the District Court's determination in its August 23, 1995 opinion that a valid lease agreement existed between LEI and Omajede. On February 5, 1998, the Bankruptcy Court entered an opinion and order dismissing LEI's claim for damages resulting from the avoidance of the lease contract under 11 U.S.C. § 544(a)(3) and P.R.Laws Ann. tit. 31, § 4068, because of LEI's failure to comply with the Court's order of August 7, 1996. The Bankruptcy Court directed that judgment be entered dismissing the adversary proceeding and closing the case. Judgment was entered on February 20, 1998.

On March 2, 1998, Omajede filed with the Bankruptcy Court a motion for partial reconsideration of the opinion and order and judgment in view of the fact that Omajede had pending its Motion to Modify Law of the Case. On May 18, 1998, the Bankruptcy Court entered an opinion and order denying Omajede's motion for partial reconsideration as well as its Motion to Modify the Law of the Case.

In the instant appeal, Omajede argues that: 1) the Bankruptcy erred in dismissing adversary proceeding (90–0151) and closing case because Omajede was not afforded its due process right of a hearing or an opportunity to present evidence in support of OMAJEDE's first, second, and fourth causes of action regarding whether the lease agreement between Omajede and LEI was null and void; 2) the Bankruptcy Court erred in its opinion ˙and order of May 8, 1998, in denying Omajede's Motion for Partial Reconsideration of the opinion and order regarding the motion to modify law of the case that a valid lease agreement existed between Omajede and LEI; and 3) that the District Court erred in its opinion and order of August 23, 1996, in determining that a valid lease agreement existed between Omajede and LEI. The Court will tackle these issues in reverse order due to the jurisdictional issues that are presented.

Appellant argues that, although the issue of whether the contract was void had been withdrawn to the District Court, the issue was not before it in the motion for summary judgment. Before delving into the thicket of Appellant's argument, the Court must determine whether it has jurisdiction to determine whether the District Court, by voice of Judge Gierbolini, erred in its decision finding that the lease agreement between Omajede and LEI was valid and not void.

In 1984, the Bankruptcy Amendments and Federal Judgeship Act did away with direct appeals from the bankruptcy courts to the courts of appeals. *See In re Manoa Finance Company, Inc.*, 781 F.2d 1370, 1372 (9th Cir.1986). By doing away with direct appeals, circuit courts did not confront issues that had not been previously before an Article III judge. *See id.* A direct appeal of a non-core issue that has been first ruled upon by an Article III judge, therefore, is not at odds with the interest of the Federal Judgeship Act. However, not allowing direct appeals to the circuit of issues brought before an Article III judge creates the awkward scenario of having district judges reviewing the decision of fellow district judges. In order to avoid this situation, the First Circuit has held that appellate jurisdiction

from decisions made by district judges sitting in bankruptcy would lie in the courts of appeal. *See In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d 820, 825 (1st Cir.1990). As in *In re Manoa* and *In re Plaza de Diego Shopping Center*, Appellant asks this Court to rule on a decision of an Article III District Court Judge. It is non-sensical and outright awkward to ask the undersigned to review the decision of a colleague whose chambers are two doors away. Therefore, rather than an appeal to the District Court under 28 U.S.C. § 158(b), an appellate review of Judge Gierbolini's decision is subject to appellate review under 28 U.S.C. § 1291.

Appellant also proposes that the Bankruptcy Court erred by denying their motion to modify the law of the case, that the District Court set by determining that a valid lease agreement existed between Omajede and La Electrónica, Inc. Appellant adds that because the District Court's determination was not final but interlocutory, its holding could be reconsidered or reviewed at any time prior to final judgment.

 A bankruptcy court is a non-Article III Court, "adjunct" to its respective district court. *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 63 n. 13, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). That is to say, bankruptcy courts do not have an independent source of jurisdiction, but rather, their jurisdiction flows from the district courts. *See In re Crysen/Montenay Energy Co.*, 240 B.R. 166, 170 (S.D.N.Y.1999). Jurisdiction in the bankruptcy courts is limited to ensuring that the "essential attributes of judicial power are retained in the Art[icle] III court." *Northern Pipeline Co.*, 458 U.S. at 81, 102 S.Ct. 2858.

In heeding with the constitutional principle of separation of powers, Congress has sought to prevent the encroaching of Article III powers by non-Article III Courts. *See* 28 U.S.C. § 157. In general terms, district courts refer bankruptcy cases to the bankruptcy court in its judicial district.

*See* 28 U.S.C. § 157(a). After such referral, the role of the bankruptcy court will hinge upon whether the matter before it is a core or a non-core proceeding. If the issues before are core issues, the bankruptcy court may hear and determine the issues and may enter orders and judgment. *See In re STN Enterprises, Inc.*, 73 B.R. 470, 478 (Bankr.D.Vt.1987). However, non-core proceedings may be heard by the bankruptcy court, which may enter orders and judgments if the parties to the non-core proceedings give their consent. *See id.* at 479. If no consent is given, the bankruptcy court may hear non-core issues but must submit proposed findings of fact and conclusions of law to the district court. *See id.* In addition, the district court may withdraw any case or proceeding, especially if the resolution of the proceedings requires both bankruptcy and other laws. *See* 28 U.S.C. § 157(d).

In the instant case, the issue regarding the validity of the lease agreement was a non-core issue which was withdrawn to and subsequently adjudicated by the District Court. Although the case was remanded for further adjudication, the non-core issues were not before the Bankruptcy Court. The consideration of these issues had been withdrawn. A bankruptcy court, on remand of a case from the district court, must follow the instructions of the district court. *See In the Matter of Dowell*, 82 B.R. 998, 1002 (Bankr.W.D.Mo. 1987). Therefore, the bankruptcy court is bound by the directives of the district court. The cases cited by Appellant which set forth the guidelines to alter the law of the case are distinguishable from the instant case as they refer to decisions made by one court. The instant case deals with having the bankruptcy judge alter the law of the case set by a district judge. To allow the bankruptcy court to act in a way that is inconsistent with the decisions related to non-core issues which are directly within the competence of the district court would undercut the district court's judicial power under Article III. *See id.* at 1006.

Thus, the Bankruptcy Court is bound by the law of the case set by the district court and its decision not to alter the law of the case is hereby **AFFIRMED.**

By the same token, the bankruptcy court did not err in entering judgment on February 20, 1998, dismissing the adversary proceeding. Appellant argues that the bankruptcy court by dismissing the adversary proceeding did not allow Appellant to present evidence pertaining to the first, second, and fourth causes of action. All of these causes of action, however, pertain to whether or not the lease agreement between Omajede and LEI was null and void. As stated before, those issues were adjudicated by the District Court in concluding that a valid lease agreement existed between the parties. Therefore, those non-core issues were not before the Bankruptcy Court.

Appellant has attempted to revive the issue regarding the validity of its lease agreement in the wrong forum. Therefore, Appellant's appeal is hereby **DISMISSED** and the Bankruptcy Court's decisions are hereby **AFFIRMED.**

**IT IS SO ORDERED.**