In the matter of Herbert D. BENSON, Debtor.

Herbert D. BENSON, Petitioner,

v.

INTERNAL REVENUE SERVICE and James R. Schurman, trustee in bankruptcy, Respondent.

Bankruptcy No. 78–01584–W.

United States Bankruptcy Court, W.D. Missouri, W.D.

June 23, 1986.

Alex M. Lewandowski, Dysart, Taylor, Penner & Lay, Kansas City, Mo., for petitioner.

Michael B. Quigley, Dept. of Justice, Tax Div., Washington, D.C., for respondent.

James Schurman, Kansas City, Mo., Trustee.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL ORDER ALLOWING CLAIM OF INTERNAL REVENUE SERVICE AGAINST THE BANKRUPTCY ESTATE UNDER SECTION 64a(4) OF THE BANKRUPTCY ACT IN THE SUM OF $3,719.12 AND OTHERWISE DISALLOWING CLAIM AND FURTHER DETERMINING THAT PETITIONER HAS NO LIABILITY FOR TAXES, PENALTIES OR INTEREST

DENNIS J. STEWART, Chief Judge.

The petitioning debtor seeks relief from the bankruptcy court in the form of an order relieving him from the duty of paying certain interest and penalties which have been assessed by the Internal Revenue Service. The request for relief has been made by petitioner's counsel on the basis of several unassembled papers in the court file,[1] but the character of the action

---

1. The issues which are joined in this action, as    is further pointed out in the text of this memo-

is to determine entitlement to money or property within the meaning of Rule 7001(1), (9) of the Rules of Bankruptcy Procedure. Accordingly, the action must be treated as an adversary proceeding within the meaning of that rule.[2]

The court therefore spent some time in exhorting counsel to file an appropriate complaint within the meaning of the governing procedural rules, but the parties agreed to a hearing on the basis of the papers in the file [3] and the court accordingly conducted a hearing on January 31, 1986, whereupon the petitioning debtor appeared personally and by his counsel, Alex Lewandowski, Esquire; the respondent Internal Revenue Service appeared by Michael Quigley, Esquire, and Michael Bowman, Esquire, and the respondent trustee in bankruptcy appeared pro se. The evidence which was then adduced demonstrated that the debtor filed his petition for relief under chapter VII of the Bankruptcy Act on December 22, 1978, and that, generally, the disputed assessments which purport to have been made by the Internal Revenue Service are interest and penalties based upon liability for the fourth quarter of 1978 and penalties and interest which may have accrued on that prepetition liability for withholding and FICA and FUTA taxes.[4]

In *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the Supreme Court of the United States set down the applicable cardinal rules which govern the running and suspension of interest in relation to bankruptcy proceedings. They are, as relevant, as follows:

(1) "It is a well-settled principle of American bankruptcy law that in cases of ordinary bankruptcy, the accumulation of interest on claims against a bankruptcy estate is suspended as of the date the petition in bankruptcy is filed." 384 U.S. at 682, 86 S.Ct. at 1678.

(2) "That rule, grounded in historical considerations of equity and administrative convenience, was specifically made applicable to the accumulation of interest on claims for taxes." *Id.*

(3) As to "the pre-arrangement period, the arrangement period, and the liquidating bankruptcy period(,) (a) tax incurred within any one of these three periods would, we think, be entitled to bear interest against the bankruptcy estate until, but not beyond, the close of the period in which it was incurred. Thus, in a case concerning taxes incurred during the first period ... that is, before the filing for a Chapter XI arrangement—the Court has summarily affirmed a judgment that the accumulation of interest must be suspended as of the date the Chapter XI petition was filed. Where ... the taxes have been incurred in the Chapter XI proceeding itself, application of the principles enunciated in *Sexton (v. Dreyfus*, 219 U.S. 339 [31 S.Ct. 256, 55 L.Ed. 244 (1911)]) and *(City of New York v.) Saper*, (336 U.S. 328 [69 S.Ct. 554, 93 L.Ed. 710 (1949)]) permits interest to accrue throughout the arrangement period; the principle requires only

---

randum, have come up in the context of petitioner's counsel's various requests for a hearing on the "claim of the Internal Revenue Service." Consequently, in making its ruling on the issues, the bankruptcy court has resisted the temptation to go beyond the scope of issues which can reasonably be considered to have been raised by the claim of the Internal Revenue Service which is on file in this case.

2. "An adversary proceeding ... is a proceeding in a bankruptcy court (1) to recover money or property.... (7) to obtain an injunction or other equitable relief ... (9) to obtain a declaratory judgment relating to any of the foregoing." Rule 7001 of the Rules of Bankruptcy Proce-

dure. It appears that the relief sought by the petitioner fits into one or more of these categories.

3. The parties all agreed in the course of the hearing of January 31, 1986, that the court might make its decision without the filing of a formal complaint.

4. Even though the issues have not been tightly framed by pleadings or documents otherwise containing formal averments, this court cannot reasonably be expected to go beyond the issues which can be considered as having fairly been raised by the proof of claim filed by the Internal Revenue Service. See note 1, *supra.*

that the accumulation of interest be suspended once a petition in bankruptcy is filed." 86 S.Ct. at 1681, 1682.

(4) "(T)he suspension of interest extricates the superseding trustee from a serious dilemma he would otherwise face, whether to pay subordinated chapter XI tax claims prematurely in order to forestall the accrual of interest, or to increase the burden on the bankrupt estate by allowing the interest to accumulate." 86 S.Ct. at 1682.

(5) "There can be no question that, under section 6011(a) of the Internal Revenue Code, the trustee was under an obligation to file returns for ... taxes, even though the taxes themselves were incurred by the debtor in possession during the pendency of the arrangement proceeding. It therefore follows that ... where a Chapter XI arrangement has been superseded by a liquidating bankruptcy under the Bankruptcy Act, the United States is entitled to exact the penalties here in question as a legitimate means to enforce the prompt filing of the tax returns." 86 S.Ct. at 1685.

The governing principles which are thus contained in *Nicholas v. United States, supra,* appear facile and easy to understand. And they also continue to have currency in the law.[5] The issue which has given the court pause in this case is that the paucity of evidence and information made available has made it difficult to apply the principles in what amounts almost to a vacuum. As observed above, the debtor has continually resisted the court's request that a complaint properly be filed which would precisely state the issues and time periods as to which rulings are sought. The debtor's counsel, however, has, in the main, simply adverted to the proofs of claim which have been filed by the Internal Revenue Service and has, at length, produced the testimony of the debtor to the effect that, after the filing of the petition for relief on December 22, 1978, records sufficient to prepare the tax returns for the last quarter of 1978 were transmitted to the trustee in bankruptcy; that the debtor then understood from his counsel that the trustee would take care of taxes in January 1979; that the same counsel is not now available for testimony in this court, having moved to a distant state some time ago; that the debtor then acted under the assumption that the taxes had been paid and continued to be under that assumption until Spring of 1985 when he first knew that the taxes were not paid and that the Internal Revenue Service was preparing to levy on his wife's house; that the trustee had not previously told the debtor of the existing Internal Revenue Service claims; that he attempted to obtain records from the trustee which would be necessary to prepare tax returns and he was informed by his counsel that the tax returns would be the trustee's responsibility; and that he was never again in the building where his business had formerly operated once the trustee had taken it over.

In the course of the hearing of January 31, 1986, the Internal Revenue Service offered in evidence a quarterly federal tax return which had been prepared for the quarter ending December 31, 1978. It purports to show a tax liability on taxable withholding and FICA wages paid for the quarter of $2,170.42. According to the claim filed by the Internal Revenue Service in this case on August 13, 1979, the amount due as of that date was $3,719.12. The components of this claim were (1) the $2,170.42 in "withholding and FICA" assessed for the fourth quarter of 1978; (2) some $1,548.70 in FUTA taxes; (3) $1,149.77 in post-petition penalty and (4)

---

5. See, e.g., *United States Dept. of Interior v. Elliott,* 761 F.2d 168, 170 (4th Cir.1985); *Matter of Beverly Hills Bancorp,* 752 F.2d 1334, 1339 (9th Cir.1984) ("As a general rule ... accrual of interest on a debt is suspended upon the filing of a petition in bankruptcy ... An award of post-petition interest ... may be allowed when the bankrupt later proves to be solvent ... The award of postpetition interest is dependent upon the equities of the case.... Moreover, the bankruptcy court's finding, as a matter of discretion, is subject to reversal only for abuse of discretion."); *Matter of Lumara Foods of America, Inc.,* 50 B.R. 809, 813 (Bkrtcy.N.D.Ohio 1985), and cases there cited.

$118.27 in postpetition interest to the date of the statement, August 9, 1979. It would appear that the amounts now due on postpetition interest and penalties would be greatly larger by the present time. It also appears to be the debtor's testimonial contention, made in the hearing of January 31, 1986, that the trustee, and consequently the estate, are liable for any penalties (and interest thereon) for failure to file the fourth quarter return and that the interest on the tax liability cannot be assessed against him because the taxes were all incurred prior to the date of the filing of the petition for relief in bankruptcy, December 22, 1978.

■ At first blush, the first contention might appear to be supported by the above-quoted ruling in *Nicholas v. United States, supra,* to the effect that a trustee is required to file returns for taxes, if the filing date falls after the supervening bankruptcy, even though the tax liability was previously incurred. In that instance, however, the law made the bankruptcy estate liable for the payment of taxes and penalties as though the debtor-in-possession and the trustee were one and the same person. See 384 U.S. at 693, n. 27, 86 S.Ct. at 1684–85, n. 27, to the following effect:

"The liability of the trustee for the principal of these taxes results from his succession in interest to the title of the debtor in possession, who, as an officer of the bankruptcy court, was clearly subject to such taxes under the provisions of 28 U.S.C. section 960 ... As the successor in interest, the trustee is bound by all authorized acts of the debtor in possession ... In general, the trustee himself is under a duty to seek out and pay taxes accruing against the bankrupt estate during the bankruptcy itself.... The dominant aspect here ... is the continuity of interest between the debtor in possession and the trustee as officers of the bankruptcy court. The crucial fact in the present case, so far as the obligation to file the tax returns is concerned, is that the taxes were in fact incurred during proceedings under the Bankruptcy Act.

*Thus, nothing said in this opinion may be taken as imposing any obligation upon a trustee in bankruptcy to file returns for taxes incurred before the initiation of proceedings under the Act.* Cf. I.T. 3539, 1949–1 Cum.Bull. 90 (*trustee not authorized to file federal income tax returns on behalf of a bankrupt individual* )." (Emphasis added.)

In the case at bar, it is derivable from the uncontradicted testimony of the debtor Herbert D. Benson that all of the taxes sought to be collected must be attributable to the pre-bankruptcy period. He states that he vacated the premises as of the date of bankruptcy and the trustee himself, according to the evidence or lack thereof, did not operate the business, but forthwith set out to liquidate it according to the provisions and requirements of chapter VII of the Bankruptcy Act.

Under such circumstances, according to the foregoing principles, it cannot be said that the trustee was under a duty to file the tax return for the fourth quarter withholding and FICA and FUTA taxes. Insofar as the claim of the Internal Revenue Service is for such a penalty and for interest on that penalty, it must, in accordance with the foregoing principles, be disallowed as a claim against the bankruptcy estate.

■ The court must proceed, then, to the issue of whether the debtor must retain personal liability for the penalty and interest thereon when, according to the foregoing principles, it devolved upon him to file the tax return for the fourth quarter tax liability. In this regard, however, according to his *uncontradicted* testimony, the debtor states that his attorney advised him that he did not have to file the tax return; that it was the trustee's duty to do so; and that this advice of counsel seemed to him to be corroborated by the fact that the trustee had taken over custody of the relevant files and records and would not produce them for his inspection and copying on his request. Under such circumstances, it has long been recognized "that reliance on the advice of counsel ... sought and received in good faith is 'rea-

sonable cause' for failing to file a tax return." *Haywood Lumber & Min. Co., v. C.I.R.*, 178 F.2d 769, 771 (2d Cir.1950). This rule persists today. See, e.g., *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 693, 83 L.Ed.2d 622 (1985), to the following effect:

> "Courts have frequently held that 'reasonable cause' is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken ... This Court has also implied that, in such a situation, reliance on the opinion of a tax advisor may constitute reasonable cause for failure to file a return. See *Commissioner v. Lane-Wells Co.*, 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684 (1944) (remanding for determination whether failure to file return was due to reasonable cause, when taxpayer was advised that filing was not required).
>
> "When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first

place. 'Ordinary business care and prudence' does not demand such actions."

This rule appears to be squarely applicable to the facts which the uncontradicted evidence demonstrates to have existed in this case.[6] Accordingly, this court concludes that the penalty for the failure to file, and the interest on it, cannot be assessed against the debtor.

■■■ With respect to the basic and principal tax liabilities, the $2,170.42 for withholding and FICA and $1,548.70 for FUTA, they enjoy the status of administrative claims. See section 64a(4) of the Bankruptcy Code.[7] See also *Nicholas v. United States, supra*, 384 U.S. at 683, n. 10, 86 S.Ct. at 1679, n. 10. ("Thus, section 64a of the Bankruptcy Act of 1898 ... granted an absolute priority to claims for taxes ..."). But, according to the foregoing principles, when, according to the uncontradicted evidence, these basic and principal tax liabilities were all incurred prior to the date of bankruptcy, no interest can be charged either against the estate—or against the debtor—for the delay in payment. "It is a well-settled principle of American Bankruptcy law that in cases of ordinary bankruptcy, the accumulation of interest on claims against a bankrupt estate is suspended as of the date the petition in bankruptcy is filed." *Nicholas v. United States, supra*, 384 U.S. at 682, 86 S.Ct. at 1684. In this case, there is no indication that the estate itself does not contain sufficient funds to pay the tax liability thus declared to be legal, a total of $3,719.12, in

---

**6.** The Supreme Court, in *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 688, 83 L.Ed.2d 622 (1985), concerned itself with the question of "whether a taxpayer's reliance on an attorney to prepare and file a tax return constitutes 'reasonable cause' under section 6651(a)(1) of the Internal Revenue Code, so as to defeat a statutory penalty incurred because of a late filing." It was determined that reliance on an attorney, accountant or tax advisor *to file* the return does not constitute such "reasonable cause." But the *advice* of such an accountant, attorney or advisor that one was not required to file a return was held to constitute such "reasonable cause."

**7.** Which reads as follows: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be.... (4) taxes which became legally due and owing by the bankrupt to the United States or any State or any subdivision thereof which are not released by a discharge in bankruptcy." And see section 17a(1) of the Bankruptcy Act to the effect that "(a) discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or part, except such as are taxes which became legally due and owing by the bankrupt to the United States or

their totality.[8] Therefore, the rule of *Bruning v. United States*, 376 U.S. 358, 361, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964), to the effect that the government has a right to "continuing interest on an undischarged and *unpaid* tax liability" which survives the bankruptcy proceedings, has no applicability.[9]

Accordingly, for the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that the claim of the Internal Revenue Service against the within estate in bankruptcy be, and it is hereby, allowed in the sum of $3,719.12. It is further

ORDERED, ADJUDGED AND DE-CREED that the petitioner has no further liability for taxes, penalty or interest assessed for the fourth quarter of 1978.

any State or any subdivision thereof within three years preceding bankruptcy ..."

8. According to the last reports of the trustee in the file of this case, over $35,000 is contained in the estate.

9. Under such circumstances, the court need not reach the issue of whether in general there is a rule which would delete the debtor's responsibility to pay interest when the estate administration is unduly prolonged.