In the Matter of William F. IRVIN and Nancy K. Irvin, Debtors.

William F. IRVIN and Nancy K. Irvin, Plaintiffs,

v.

UNITED STATES of America, on Behalf of the INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 82–02594–3.
Adv. No. 88–0686–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

Feb. 13, 1989.

Stephen B. Strayer, Liberty, Mo., for plaintiffs.

Charles S. Kennedy, Trial Atty., Tax Div., Office of Sp. Litigation, Washington, D.C., for defendant.

AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT DECLARING PLAINTIFF TO HAVE NO LIABILITY FOR POSTPETITION INTEREST AND PENALTIES ON NON-DISCHARGEABLE TAX OBLIGATION

DENNIS J. STEWART, Chief Judge.

This is an action brought by the plaintiff debtors for a declaration by this court that the debtors are not obligated to pay post-petition interest and penalties on a prepetition tax liability which has been or will be wholly paid from the bankruptcy estate. The court, by means of its prior orders in this action, set the hearing of the merits of the action for December 28, 1988. At that time, the parties submitted the following stipulation of facts, which is incorporated herein by reference so as to constitute the findings of fact required by Bankruptcy Rule 7052:

"COMES NOW Plaintiff and Defendant, by their respective counsel, and stipulate that the matters at issue in this cause shall be determined by the Court upon the following undisputed and uncontradicted facts, to wit:

"1. The Plaintiffs William and Nancy Irvin (hereinafter 'Debtors') filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on August 12, 1982.

"2. On June 29, 1984, the Debtors filed a complaint in Adversary No. 84–0290–3, under Section 505 of the Bankruptcy Code to determine their liability for taxes owing to the Defendant, Internal Revenue Service (hereinafter 'IRS'), a copy of which is attached hereto as Exhibit 'A'.

"3. On August 2, 1984, the IRS served its answer to the Debtors' complaint in Adversary No. 84–0290–3, a copy of which is attached hereto as Exhibit 'B'.

"4. On October 16, 1984, IRS served answers to Plaintiff's First Interrogatories in Adversary No. 84–0290–3, a copy of which is attached hereto as Exhibit 'C'.

"5. Prior to February 22, 1985, the Debtors and IRS settled the Debtor's complaint in Adversary No. 84–0290–3 and agreed to entry of judgment on that complaint upon the terms which are set forth in the Court's 'Final Judgment Determining Liability for Taxes and Allowing Tax Claims Against the Estate' filed March 6, 1985, a copy of which is attached hereto as Exhibit 'D'.

"6. That at all times herein pertinent the Debtor's Chapter 7 case is an asset case, which had sufficient monetary assets to pay the taxes owing to IRS, in full.

"7. In December, 1986, the Debtors' Trustee in Bankruptcy paid to IRS the sum of $2,980.87 in full satisfaction of the Court's judgment determining tax liability.

"8. The Debtors received their Discharge in Bankruptcy on May 15, 1987, a copy of which is attached hereto as Exhibit 'E', and the case was closed.

"9. Since the Debtors' discharge and closure of the case the IRS has sought to collect from the Debtors late payment penalties and interest accruing on the Debtors' tax liability after August 12, 1982, the date the Debtors filed their Chapter 7 Petition. The amount of late penalties and interest sought by the IRS as of September 8, 1988, is $2,887.05.

"10. On October 25, 1988, the Debtors filed in Adversary Proceeding No. 88–0686–3 their 'Complaint to Enforce Judgment Determining Liability for Taxes, to Determine Dischargeability of Claim for Post-petition Penalties and Interest, or, in the Alternative, to Abate Post-petition Penalties and Interest', a copy of which is attached hereto as Exhibit 'F'.

"11. On November 29, 1988, the IRS filed in Adversary No. 88–0688–3 its Answer to Debtors' complaint, a copy of which is attached hereto as Exhibit 'G'.

"12. The post-petition interest sought to be collected from the Debtors by IRS was unmatured on August 12, 1982, the date the Debtors' Chapter 7 Petition was filed.

"13. The late payment penalty sought to be collected from the Debtors by IRS was unmatured on August 12, 1982, the date the Debtors' Chapter 7 Petition was filed.

"14. The post-petition interest and post-petition late payment penalties sought to be collected by IRS are not entitled to priority under Section 507 of the Bankruptcy Code."

## Conclusions of Law

■ There can be little question that the virtually-undisturbed course of the existing law holds that postpetition interest is chargeable to debtors on nondischargeable tax obligations. The law which has governed the issue of postpetition interest on nondischargeable tax obligations has arisen in an era of bankruptcy administration in which the process of closing a case sometimes consumed years from and after the date on which estate collection and administration had been completed. In several notable instances, this has resulted in an extremely large tax liability, attributable solely to postpetition interest, for which the debtor has been liable despite the fact that there has been, nearly throughout the bankruptcy process, a sufficient sum in the bankruptcy estate to pay the entire tax liability until the interest ultimately, while the frequently tortuous procedure of case closing took place, outdistanced the sum in the estate.[1] The case at bar is, according both to the parties' stipulation of facts and the files and records before the court,[2] one such case—one in which the trustee simply failed timely to pay out the monies attributable to the Internal Revenue Service claim and on which interest has now accumulated in a sum which the debtors may not be able to pay and which has made their electing to avail themselves of the bankruptcy process a lasting source of liability rather than the granting of the fresh economic start which it was intended by Congress to be.[3] And it is certain that the delay in payment to

1. This was the case in *Matter of Benson,* 64 B.R. 128 (Bkrtcy.W.D.Mo.1986), on motion for reconsideration, 65 B.R. 148 (Bkrtcy.W.D.Mo.1986), reversed, 88 B.R. 210 (W.D.Mo.1988), in which, due in major part to the antiquated system of computing dividends employed by the former clerk of the bankruptcy court (whereby a single deputy clerk computed all dividends, slowly and many times over a period comprising months and even years), an extraordinarily long period of administration took place. And, because of the clerk's insistence that no monies could be paid out until all dividends had been computed, the Internal Revenue Service was not paid out of the estate until over 9 years after the petition was filed. An even more dramatic and tragic case was that of *Matter of Shurback,* In proceedings for straight liquidation under chapter 7 of the Bankruptcy Code No. 79–00815–BW–1 (Bkrtcy.W.D.Mo. June 2, 1981), in which the debtor, a dentist, sought through the bankruptcy trustee, to sell his existing dental practice in order to pay the prepetition indebtedness to the Internal Revenue Service. The practice was ultimately sold by the trustee for a price which was sufficient to pay the Internal Revenue Service. But then the closing process above described was commenced by the former bankruptcy clerk—and it ended only with a distribution at a time when the postpetition interest on the Internal Revenue Service obligation had

mounted to a point where it nearly equaled the prepetition obligation. The whole purpose of the bankruptcy was defeated for the debtor, and wholly without his fault. After the departure of the former bankruptcy clerk from office, the court, in May 1986, commenced to close asset cases using a much speedier timetable and relying on trustees in individual cases to make the computations. But, as the case at bar demonstrates, it was still not possible that the office of the clerk of the bankruptcy court, with limited resources for such purposes, could adequately police all trustees. So, still, in an occasional case such as that at bar, timely distributions were not made.

2. Most critically, as both the stipulation of facts and the court records demonstrate, distribution of the estate—and consequently payment to the Internal Revenue Service—did not take place until over 4 years after commencement of the case and fully 3 years after a sum sufficient fully to pay the Internal Revenue Service had been brought into the estate.

3. Without the accumulation of postpetition interest, attributable solely to the delay of the trustee, nothing would now be owed. But now as much is owed in penalties and interest ($2,887.05) as was owed in tax and interest at

which the interest *sub judice* is attributable is not due to any fault of the debtors, but rather to the bankruptcy process itself, a process which this court has constantly striven to improve, but which must nevertheless remain dependent upon the satisfactory functioning of the administrators who must implement it.

It was in this historical context that this court made its initial decision on the issue which is now again before it in this adversary proceeding. See *Matter of Benson,* 64 B.R. 128 (Bkrtcy.W.D.Mo.1986), on motion for reconsideration, 65 B.R. 148 (Bkrtcy.W.D.Mo.1986). In that decision, it was observed that virtually none of the

the time of filing ($2,980.87). The filing of bankruptcy has thus availed the debtors nothing in this respect.

4. In its decision in *Matter of Benson,* 88 B.R. 210, 212 (W.D.Mo.1988), the district court juxtaposes this court's conclusion that there were no *governing decisions* on the precise issue with *In re Johnson Electrical Corp.,* 442 F.2d 281 (2d Cir.1971), in the following manner:

"In its order of June 23, 1986, the bankruptcy court stated: 'In this case, there is no indication that the estate itself does not contain sufficient funds to pay the tax liability thus declared to be legal, a total of $3,719.12, in their totality. Therefore, the rule of *Bruning v. United States,* 376 U.S. 358, 361, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964) to the effect that the government has a right to "continuing interest on an undischarged and *unpaid* tax liability" which survives the bankruptcy proceedings, has no applicability.' Order at p. 8 (footnotes omitted) (emphasis in original). The bankruptcy court repeated this position in its September 12, 1986, order: 'None of the appellate authority which has been cited by the United States contradicts the rule of *Bruning* to the effect that it is only *unpaid* tax liabilities which survive bankruptcy and which earn the interest which must be paid by the taxpayer.' Order at p. 3 (emphasis in original).

"In *In re Johnson Electrical Corporation,* 442 F.2d 281 (2d Cir.1971), Johnson Electrical paid in full the amount of a tax claim which was nondischargeable under Section 17 of the Bankruptcy Act. Johnson Electrical did not, however, pay the interest which accrued on that tax claim after the bankruptcy petition had been filed. After the bankruptcy arrangement was confirmed, the IRS attempted to collect the interest from Johnson Electrical. The district court enjoined the IRS from taking any action to collect the interest. *Id.* at 282. On appeal, Johnson Electrical argued that *Bruning* did not apply because unlike the debtor in *Bruning,* Johnson Electrical had paid the entire underlying tax debt:

reported decisions as of that date had ruled precisely on the issue of whether postpetition interest was chargeable to the debtor, under current laws, *where the entire tax obligation, as it existed as of the date of bankruptcy, was paid from the bankruptcy estate.* Otherwise, however, it was uniformly held that postpetition interest had to be paid until the date of actual payment of the tax liability to the Internal Revenue Service, without respect to whether it was the debtor or those who administered the bankruptcy estate or others who were responsible for the delay.[4]

In the absence of a ruling directly on the issue before it, this court found the provi-

'The only basis suggested for disregarding *Bruning* is that here the entire tax, apparently including pre-petition interest, was paid as a result of the Chapter XI proceeding, whereas in *Bruning* only a partial payment had been made.'
"Id. at 283.
"The second Circuit disagreed.

\*   \*   \*   \*   \*   \*

"This distinction is not sufficiently substantial to warrant a different result. Either the filing of the petition stops the running of interest on federal tax claims against a bankrupt or it does not. In holding the latter, *Bruning* made clear that the reasons generally causing disallowance of claims for such interest against the bankrupt estate, to wit, 'the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience,' 376 U.S. at 362, 84 S.Ct. at 909, were inapplicable when a nondischargeable federal tax claim was asserted against the bankrupt himself."

\*   \*   \*   \*   \*   \*

"To be sure, it can be argued that it is unfair to charge a bankrupt with interest during a period when his funds are in *custodia legis.* But often, perhaps even usually, the money is being used by the debtor in possession or the trustee for a useful business purpose and there is thus a real hardship in the bankrupt's having to pay interest on a claim not subject to discharge. In any event the words of 26 U.S.C. § 6873(a) and § 17 of the Bankruptcy Act are too strict to leave room for judicial loosening in the service of a policy that at best is doubtful."
"Id. at 284.

"Similarly, in *Hugh H. Eby Co. v. United States,* 456 F.2d 923, 925 (3rd Cir.1972), the Eby Company argued that the district court 'erred in applying *Bruning*' because 'the taxes were paid in full here whereas they were not so paid in *Bruning.*' The Third Circuit rejected this argument:
"That the underlying taxes were later paid in full here does not affect the fact that appellant

sions of the new Bankruptcy Tax Act of 1980 instructive in *Matter of Benson, supra*. Although the *Benson* case was one which was required to be decided under the pre–1979 Bankruptcy At[5], before the Bankruptcy Tax Act was applicable, it is appropriate for a court to resolve an ambiguity in the pre-existing state of the law by reference to a later expression of the Congress clarifying the issue.[6] Thus, in *Matter of Benson, supra*, at 151, this court pertinently reasoned as follows by reference to the new Bankruptcy Tax Act provisions with respect to penalties:

"Further, in other provisions, the Bankruptcy Tax Act of 1980 appears to make it clear that the reason for this change was, in part, to ensure that debtors did not bear the burdens of penalties

had the use of the Government's money during the pendency of the reorganization proceeding, and that since the underlying debt is not discharged by operation of Section 17 of the Bankruptcy Act, 11 U.S.C. § 35 (1964), neither is the interest which accrues by reason of the use of such money during the pendency of the proceedings. See 376 U.S. at 360, 84 S.Ct. 906 [907], 11 L.Ed.2d 772. "Id."

But, in *Matter of Benson*, 65 B.R. 148, 150, 151 (Bkrtcy.W.D.Mo.1986), this court had observed that the *Johnson* decision had been predicated on legal precedents and a statute which had since been changed in very critical respects: "In *Hugh H. Eby Co. v. United States*, 456 F.2d 923, 925 (3rd Cir.1972), the debtor paid the principal in full during the course of a confirmed chapter XI plan. It was held lawful for the United States to collect the interest from the debtor 'from assets acquired by the taxpayer subsequent to the confirmation of the plan of arrangement.' 456 F.2d at 924. Under the former chapter XI, the bankruptcy was ordinarily regarded as closed as of the date of the confirmation of the plan. (The court was to retain jurisdiction only if 'is so provided in the arrangement.' Section 368 of the Bankruptcy Act.) Thus, the ruling was to the effect that so much of the debt *which survived bankruptcy* and was not paid during the course of the bankruptcy proceedings might be collected thereafter, plus both prepetition and postpetition interest. The same holding was the rule of another decision now cited and relied upon by the government, *In re Johnson Electrical Corp.*, 442 F.2d 281, 282 (2d Cir.1971), in which it was held that a full payment of principal made under a chapter XI plan did not preclude the later collection of interest on a nondischargeable tax obligation. In that case, the court observed that one line of authority had ruled to the contrary, but quoted the opinion in the *Bruning* decision, *supra*, to the effect that there was

and interest for delay in distribution to the Internal Revenue Service on tax liabilities, when that delay was necessitated by title 11 laws and exigencies of estate administration rather than by any delay or fault of the debtor. Thus, new section 6658, Title 26, United States Code, entitled 'coordination with title 11,' prohibits the imposition of penalties and certain other additions to a tax 'for failure to make timely payment of tax with respect to a period during which a case is pending under title 11 of the United States Code ... if such tax was incurred by the debtor before the ... order of relief ... and ... the petition was filed before the due date prescribed by law.' According to the legislative history of this section, it:

'no indication in the *wording or history of section 6873(a)* that the section was meant to limit the Government's right to continuing interest on an undischarged and *unpaid* tax liability.' 376 U.S. at 361, 84 S.Ct. at 908. (Emphasis added.) Section 6873(a), Title 26, United States Code, as it then existed, provided that:

'Any portion of a claim for taxes allowed on a receivership proceeding or any proceeding under the Bankruptcy Act which is unpaid shall be paid by the taxpayer upon notice and demand from the Secretary or his delegate *after the termination of such proceeding.*' (Emphasis added.)

"It is clear from this governing statute, as it is from the literal wording of the *Bruning* decision (as the Government admits) that the 'unpaid' liability which is adverted to is that which remains unpaid after the termination of the title 11 proceeding."

* * *

"[Further,] section 6873(a), *supra*, has been amended to leave out any reference to bankruptcy proceedings. It now simply reads: 'Any portion of a claim for taxes allowed in a receivership proceeding which is unpaid shall be paid by the taxpayer upon notice and demand from the Secretary after the termination of such proceeding.'"

5. The effective date of which was October 1, 1979.

6. "[I]t has been said that a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied, although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guarantee." 73 Am.Jur.2d *Statutes* § 354, p. 490 (2d ed. 1974).

'relieves the debtor or the trustee from penalties which otherwise might be applicable ... for failure timely to pay certain taxes, with respect to a period during which a bankruptcy case is pending, to the extent that the bankruptcy case precludes payment of such taxes when due ... *No inference is intended,* by virtue of the adoption of the[se] rules, *that under present law such penalties should be imposed where a debtor or the trustee of a bankruptcy estate is precluded from timely paying such taxes by virtue of bankruptcy proceedings.'* (Emphasis added.)

6 U.S.Code Cong. and Adm.News, 96th Cong.2d Sess., p. 7064. The reference to prior law in the emphasized portion of the above quoted statement, along with the clear letter of the *Bruning* case, *supra* [376 U.S. 358, 361, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964)], supports this court's foregoing interpretation of the law applicable to the case at bar. The amount which may be collected subsequent to bankruptcy is the principal amount which remains unpaid at the conclusion of the bankruptcy proceedings and the interest thereon is the interest which remains collectable by the government. It makes little sense to permit the collection of interest on amounts paid out of the estate, but which are delayed through the necessities of estate administration and through no fault of the debtor. It is recognized that the new statutes apply to penalties and do not, by their express terms, apply to interest. But interest, as a matter of definition, can run only from the due date. See section 6601, Title 26, United States Code. And it must be said that these statutes effectively alter the date on which payment is due. This court must make it clear that its ruling purports to apply only with respect to cases such as that at bar, in which the amount of the tax which was due as of the date of bankruptcy is fully paid by the trustee before the conclusion of the bankruptcy proceedings."

Further, this court predicated a second, separate and independent basis for decision on the equitable reasons abovementioned. See 65 B.R. at 151 to the following effect:

"No other rule can make any intelligible sense when the debtor cannot ... be responsible for the delay in the distribution of monies in a title 11 case. The principle is recognized under the new provisions in the law instituted by the Bankruptcy Tax Act of 1980. Although the provisions of this Act, technically, do not apply to this case, which was filed before its effective date, its provisions may nevertheless be considered in interpreting the preexisting law. Unless the old Act contained specific provisions contrary to the relevant provisions of the new Act, '[t]he same principles (in terms of the reasons given) for the creation of the new law, apply to corporate bankruptcies under the old Act as well as those under the new Bankruptcy Tax Act of 1980.' *Matter of Financial Corp.*, 19 B.R. 212, 214 (Bkrtcy.W.D.Mo.1982). Under the new Act, section 6873(a), *supra,* has been amended to leave out any reference to bankruptcy proceedings. It now simply reads:

'Any portion of a claim for taxes allowed in a receivership proceeding which is unpaid shall be paid by the taxpayer upon notice and demand from the Secretary after the termination of such proceeding.' "

On appeal to the district court, however, that court simply ruled that the general aphorism that postpetition interest is chargeable to the debtor or a nondischargeable tax obligation was sufficient to determine the issue. *Matter of Benson*, 88 B.R. 210 (W.D.Mo.1988). It rejected any notion that the provisions for relief from penalties in the Bankruptcy Tax Act could have any application, not only by reason of the fact that the Tax Act was not in effect at the time of the inception of the *Benson* case, but also by reason of the fact that it applied only to penalties and not expressly to interest.[7] But the standard canons of con-

---

7. "The bankruptcy court's reliance on 26 U.S.C. §§ 6658 and 6873(a) is misplaced. Section 6658

struction permit a court to hold that the general law must be consistent with a statute, in the sense that interpreting the legal effect of an event outside the contemplation of the statute in a manner which would frustrate the force and effect of the statute must be avoided.[8] And it makes little sense to remit a penalty which the debtor incurs solely because of estate administration and not to remit the interest charges which are the penalty's necessary appanages.[9] For the intention behind the statute is to relieve the debtor of liability incurred because of events which occur without his fault and which are wholly beyond his control.[10] These considerations particularly apply in the bankruptcy context, in which it is postpetition interest charges, more frequently than penalties, which interfere with the fresh start of the debtor which is the goal of bankruptcy administration.

Further, the Bankruptcy Tax Act is fully applicable to the case at bar, as it was not in *Matter of Benson, supra.* That applicability provides a fully sufficient distinction between this case and the *Benson* case to warrant this court in holding that the debtor should not be shackled with the onerous burden of postpetition interest incurred because of events which were not his fault and which were beyond his control.

In *Matter of Benson, supra,* the district court disregarded any and all equitable considerations, citing precedent for the principle that, although the rule in favor of charging postpetition interest might work

harsh results, its application was nevertheless required by the letter of the law. See *Matter of Benson, supra,* 88 B.R. at 212 to the following effect:

"As the Court of Appeals noted, § 17 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems— e.g., those of financing government— override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts."

This reasoning appears now to be eclipsed by the legislative history of § 6658, Title 26, United States Code, which appears to give priority to debtor rehabilitation when that goal, in the context of the case at bar, comes into collision with tax collection.[11] Further, under the old Bankruptcy Act, it appears that the law did not explicitly admit of the consideration of equitable principles by the bankruptcy court in respect to any of the species of nondischargeability.[12] Under the current Bankruptcy Code, however, in respect of some of the species of nondischargeability, the federal appellate courts have been wont to state that the bankruptcy courts have wide latitude and discretion and that their exercise of that discretion will not be interfered with on appeal unless an "abuse of discretion" is

---

pertains to penalties and not interest which is the subject of this case. Section 6873(a) pertains to claims for *taxes* unpaid 'after the termination' of a receivership proceeding. Here, the taxes were paid; the dispute is over post-petition interest." 88 B.R. at 213, n. 1.

**8.** "An intent to discriminate unjustly between different cases of the same kind is not to be ascribed to the legislature. Hence, where the legislature has clearly laid down a rule for one class of cases, it is not readily to be supposed that, in the same act, a different rule has been prescribed for another class of cases within the same reason as the first." 73 Am.Jur.2d *Statutes* § 261, p. 430 (2d ed. 1974).

**9.** See note 8, *supra.*

**10.** As observed above in the text of this memorandum, the legislative history under § 6658, Title 26, United States Code, indicates that penalties should not be imposed "where a debtor or the trustee of a bankruptcy estate is precluded from timely paying such taxes by virtue of the bankruptcy proceedings." The same intent is furthered by not compelling the payment of postpetition interest under the same circumstances.

**11.** See note 10, *supra.*

**12.** Discretion has nearly always been recognized to have a role in determining objections to discharge. See, e.g., *Matter of Borron,* 29 B.R. 122 (Bkrtcy.W.D.Mo.1983), but not in the nondischargeability context.

shown.[13] And, whenever discretion can be exercised by a court, it may generally be said that equitable principles may be considered by that court in exercising that discretion.[14] Virtually nowhere, among the entire gamut of grounds for nondischargeability, is application of equitable principles more justified than in actions like that at bar, in which, without the amelioration which the employing of equitable principles will bring, the debtors might well have to pay interest due to a delay in payment caused solely by a trustee's negligently deferring payment and in no wise caused by the debtors whom the law might otherwise penalize.

Finally, in *Matter of Benson, supra,* the district court applied a standard of review which constitutes, in actuality, a *de novo* standard of review of all the bankruptcy court's findings of fact and conclusions of law and thereby necessarily refused to recognize any discretionary power in the bankruptcy court. This type of disregard of bankruptcy court findings was ordinarily categorized as error even under the old Bankruptcy Act.[15] Although the district court in that case, in the following language, purported to honor the "clearly erroneous" standard which is generally recognized as the appropriate standard of review of bankruptcy court findings in a "core" case, it went on to state that mixed questions of law or fact, i.e., findings of "ultimate" fact would, like conclusions of law, be reviewable *de novo.* See *Matter of*

*Benson, supra,* 88 B.R. at 210, to the following effect:

"A finding is clearly erroneous when the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.' *Anderson v. City of Bessemer, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). This court can neither undertake a *de novo* review nor reverse the bankruptcy court's findings merely because it would have decided the case differently. *Id.* However, the district court must independently determine questions of law or *mixed questions of law or fact. In the Matter of Multiponics,* 622 F.2d 709, 713 (5th Cir.1980); *In the Matter of Hammons,* 614 F.2d 399, 403 (5th Cir.1980)." (Emphasis added.)

The recognized authorities on standards of review regard such a formula as a patent departure from the "clearly erroneous" standard. "Even when a district [or other trial] judge finds an ultimate fact, a court of appeals is in error when it makes its own finding, for the 'clearly erroneous' standard under Rule 52(a) applies to all findings, including findings of ultimate facts." 5 K. Davis, *Administrative Law Treatise,* section 29:5, p. 352 (2d ed. 1984). And it is extremely difficult to imagine how a reviewing court can review the "ultimate" finding of fact, or any critical mixed finding of fact and conclusion of law de novo, without, in effect, reviewing all subsidiary findings under the same standard.[16]

---

**13.** "[W]e do not disturb a dischargeability ruling by a bankruptcy judge unless it is 'a gross abuse of discretion.'" *Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir.1982).

**14.** "[Discretion] is not the indulgence of a judicial whim, but the exercise of judicial judgment, based on facts and guided by law ... or the equitable decision of what is just and proper under the circumstances." Black's Law Dictionary p. 553 (4th ed. 1968).

**15.** "As the parties acknowledge, this Court, in reviewing the findings of fact of the bankruptcy judge, must affirm factual findings unless they are clearly erroneous. *In re Taylor,* 514 F.2d 1370 (9th Cir.1975); *In re Cox,* 244 F.Supp. 430 (W.D.Mo.1965)." *Matter of Shurback,* Civil Action No. 80–0818–CV–W–1 (W.D.Mo. Dec. 17, 1980, Oliver, J.). The *Shurback* case was filed July 5, 1979, prior to the effective date of the

Bankruptcy Code, October 1, 1979. And see further *In re Cox,* 244 F.Supp. 430, 436 (W.D. Mo.1965), to the effect that "[t]he making of findings of fact on disputed testimony is the primary function of the referee and under General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53, the judge is required to accept the referee's findings of fact unless they are 'clearly erroneous.'"

**16.** It is difficult to imagine how nearly any finding of a *material* fact is not in some wise a "mixed finding" of law and fact. And, in reviewing the ultimate finding *de novo,* the ordinary effect is to question all the others. In this case, for example, to review *de novo* the ultimate finding that the debtor was not at fault for the delay in paying the Internal Revenue Service would clearly necessitate *de novo* review of all the underlying findings.

■ Apparently, the district court has recently changed its mind on the issue of whether this disguised *de novo* standard of review is applicable in "core" proceedings such as those at bar. Formerly, in *Matter of Dowell,* 82 B.R. 998, 1006 (Bkrtcy.W.D. Mo.1987), this court pointed out, in the following language, that such a standard of review tended to equate the judicial business of that court and the bankruptcy court and that, when the district court employed such a standard of review and then remanded the case for entry of judgment by the bankruptcy court, it was tantamount to conferring the federal judicial power on the bankruptcy court by directing it to enter judgment in a "noncore" or "related" case. See *Matter of Dowell, supra,* at 1006, to the following effect:

"[W]hen reviewing courts actually substitute their findings for those of the lower courts, the competence of the two courts, at least with respect to the subject matter of the case involved, must be regarded as equal. 'Courts usually substitute judgment on the kind of questions ... that are within their special competence, but on other questions they limit themselves to deciding reasonableness.' 5 K. Davis *Administrative Law Treatise* section 29.1, p. 332 (2d ed. 1984). This principle is recognized in the distinction between 'core' cases and 'related' cases under the Federal Judgeship and Bankruptcy Amendments Act of 1984, under which *de novo* review is reserved for 'related' decisions because they are di-

rectly within the district court's competence. Accordingly, to direct this court to render a judgment on an issue which the district court considers to be so directly within its competence that its findings must supersede those of this court is to direct that this court exercise the power of the district court—the federal judicial power under Article III of the Constitution of the United States."

Consequently, this court issued its judgment in accordance with the *de novo* findings of fact which appeared to have been made by the district court.[17] But thereafter, the district court again remanded the action for entry of judgment in accordance with the findings of fact which the *bankruptcy court* believed to be correct.[18] Accordingly, this court now concludes that the correct standard of review in a "core" proceeding such as that at bar, in this case as in *Matter of Benson, supra,* should permit this court to make the critical findings on legislative intent[19] and the equitable considerations[20] necessary to support its conclusions that a debtor should not be required to pay postpetition interest and penalties on a nondischargeable tax liability, the prepetition amount of which is fully paid from the bankruptcy estate.

In conclusion and summary, this court holds that the district court decision in *Matter of Benson, supra,* is not binding in this case because (1) it was decided in a case to which the old Bankruptcy Act exclusively applied and (2) it therefore did not

---

**17.** See 82 B.R. at 1008.

**18.** See *Matter of Dowell,* Civil Action No. 88–0176–CV–W–9 (W.D.Mo. December 6, 1988), to the following effect:
"Therefore, it is hereby ORDERED that this case is remanded to the bankruptcy court to reconsider its December 16, 1987, order in light of this order and to render a decision it believes is factually and legally proper."

**19.** Further, in the absence of clear language otherwise in the statute or legislative history, it is the duty of the courts "to favor an interpretation ... which would render the statutory design effective in terms of the policies behind its enactment and to avoid an interpretation which would make such policies difficult of fulfillment." *National Petroleum Refiners Association v. FTC,* 482 F.2d 672, 689 (D.C.Cir.1973). In this case, there can be little question that the intent was to relieve bankrupts of the burden of being

penalized by additional taxes, interest, or penalties because of the delay in estate administration.

**20.** The district court's *de novo* review of the ultimate finding of fact in the *Benson* case—that the debtor was without fault and did not cause the delay in paying the Internal Revenue Service and that the law did not admit of equitable considerations—was apparently what compelled its ruling. This was so despite the fact that the law had meantime been changed in at least one critical respect and the Congress in making those changes expressly declined to foreclose equitable considerations in prior cases, see note 10, *supra,* and pages 8 and 9 of the text of this memorandum, *supra.* But now, the "abuse of discretion" standard, see note 13, *supra,* necessarily precludes the *de novo* standard.

apply the Bankruptcy Tax Act to the extent applicable and (3) it therefore also did not permit the bankruptcy court to consider the equitable factors which case law under the new Code permits and (4) the district court applied a standard of review in that case which did not permit the bankruptcy court to consider the equitable factors which are now applicable. It is therefore hereby

ORDERED, ADJUDGED AND DECREED that the debtors are not liable to the Internal Revenue Service for postpetition interest and penalties on their otherwise nondischargeable tax obligation.